UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                           Case No. 1:23-cv-20278

        Plaintiff,

                           HONORABLE STEPHEN J. MURPHY, III

v.

TERRELL MONTAY LONG,

        Defendant.

                         /

## OPINION AND ORDER DENYING
## <u>MOTION FOR COMPASSIONATE RELEASE [42]</u>

After Terrell Montay Long pleaded guilty to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1), the Court sentenced him to 40 months' incarceration and three years' supervised release. ECF No. 33, PageID.232–234. Less than a year later, Defendant moved for a sentence reduction. ECF No. 42. For the following reasons, the Court will deny the motion.

### LEGAL STANDARD

Historically, only the Bureau of Prisons could move for compassionate release of a prisoner. *United States v. McCall*, 56 F.4th 1048, 1053–54 (6th Cir. 2022) (en banc). Since the First Step Act of 2018, however, Prisoners have also been able to move for compassionate release themselves, but only after exhausting administrative remedies. *Id.*; 18 U.S.C. § 3582(c)(1)(A). The requirement is satisfied once Defendant has "exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a

1

request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Once the threshold is met, the analysis proceeds in three steps. First, the Court asks whether "extraordinary and compelling" reasons justify a reduction. *McCall*, 56 F.4th at 1054 (quoting § 3582(c)(1)(A)(i)). Second, it must ensure the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must determine whether the § 3553(a) factors warrant a reduction. *Id.* The court may grant the motion only if each of the requirements is satisfied. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

## DISCUSSION

I.  Exhaustion of Administrative Remedies

The Government first argued that Defendant failed to exhaust his administrative remedies. ECF No. 48, PageID.303–304. Defendant submitted a request for compassionate release to the warden on June 27, 2024. ECF No. 48-3, PageID.315–316. The warden denied his request on July 19, 2024 and explained that Defendant could "appeal this decision through the Administrative Remedy Process." *Id.* at PageID.317. According to the Government, Defendant did not attempt to appeal the warden's denial. ECF No. 48, PageID.304; ECF No. 48-4, PageID.318. Instead, on December 3, 2024, he filed the instant motion.

It is an open question whether, as here, a defendant who submits a request to the warden but does not appeal that decision and, after at least thirty days, files a

motion for compassionate release satisfies the exhaustion requirement of § 3582.

Under the statute, a defendant may bring a motion:

> after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A).

Some courts find that the 30-day-lapse provision only applies if the warden fails to respond and that, otherwise, the defendant must appeal a denial within the BOP before bringing a motion. *See, e.g.*, *United States v. Brazil*, No. 1:22-cr-20239, 2025 WL 2945729, at *2 (E.D. Mich. Oct. 17, 2025) (explaining that the 30-day-lapse applies when the prisoner submits a request "without a response from the Warden"); *United States v. Haas*, No. 6:17-cr-37-1, 2020 WL 4593206, at *2–4 (E.D. Ky. Aug. 7, 2020) ("[T]he most logical conclusion is that Congress included the 'lapse of 30 days' language to ensure that the warden of a respective facility would promptly address the compassionate release request or, if the warden failed to, to permit the defendant to petition a court for relief—not to provide defendants an opportunity to circumvent the administrative appeals process entirely.").

Other courts, however, maintain that the 30-day-lapse provision is a separate route to satisfy exhaustion and that a prisoner who has requested compassionate release more than 30 days prior to filing a motion has exhausted his administrative remedies. *See, e.g.*, *United States v. Hardin*, No. 19-cr-240, 2020 WL 2610736, at *2 (N.D. Ohio May 21, 2020) ("The language of § 3582(c)(1)(A) does not specify that the 30-day lapse provision applies only if the Warden fails to respond."); *United States v.*

3

*Jiminez*, No. 5:13-cr-45-1, 2021 U.S. Dist. LEXIS 58113, at *6–7 (W.D. Ky. Mar. 26, 2021). At least two circuits follow the second approach. *E.g.*, *United States v. Garrett*, 15 F.4th 335, 338–39 (5th Cir. 2021); *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).

The Sixth Circuit has not squarely addressed the issue, but it stated in dicta that "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them." *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020); *see also United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021) (citing *Alam* and describing the 30-day-lapse option as an alternative to exhausting administrative rights within BOP).

The Court is persuaded that a prisoner who files a motion more than thirty days from submitting a request to the warden satisfies the exhaustion requirement of § 3582(c)(1)(A). The text itself provides two routes for prisoners to exhaust administrative remedies: (1) full exhaustion of administrative rights to appeal BOP's failure to move on his behalf, "or" (2) when thirty days have passed since the warden received a prisoner's request. *Id.* Although courts often refer to the threshold inquiry as an "exhaustion requirement," the text suggests that exhaustion is just one way to satisfy the threshold inquiry and that waiting 30 days is another. Some courts categorize the 30-day-wait as a form of exhaustion because it requires the prisoner to make a request, *e.g. United States v. Garrett*, 15 F. 4th 335, 338 (5th Cir. 2021), but that label seems to be at odds with traditional conceptions of exhaustion. It is most

naturally read as a notice requirement providing BOP an opportunity to bring a compassionate release motion on a prisoner's behalf.

There is no explicit qualification in the 30-day-lapse provision that limits its application to BOP's failure to respond. If Congress meant to include a limit, it could have done so in the text; the Court will not read a limitation into the text to accord with mere assumptions about congressional intent. An additional textual clue, the inclusion of the phrase "whichever is earlier," suggests that the statute does not contain an *implicit* limitation either. Rather, according to the plain text, the prisoner may move in court thirty days after the warden receives his request if that happens before he has fully exhausted his administrative rights to appeal.

The Court acknowledges that its interpretation of § 3582(c)(1)(A) would never require prisoners to utilize the BOP appeals process and could undermine some of the purposes of exhaustion. *See Haas*, 2020 WL 4593206, at *3. But a contrary interpretation would allow the BOP to employ lengthy appellate procedures that stymy the timely adjudication of compassionate release requests. *See United States v. Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020) (disclosing the number of prisoners between 2013 and 2017 who died in prison waiting for review of their applications); *see also Hardin*, 2020 WL 2610736, at *2 n.1. Although there are potentially unintended consequences of the Court's interpretation, that does not permit the court to contravene plain text.

The Sixth Circuit has also explained that the First Step Act of 2018 "ousted the BOP from its preclusive gatekeeper position" by allowing prisoners to file

compassionate relief motions for themselves. *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Requiring prisoners to not only ask the warden to move for compassionate release but also to submit to BOP appellate procedures that are subject to change would reinstate BOP as compassionate release gatekeeper. Thus, the Court's reading of the statute accords with the amendment governing compassionate release.

Thus, the best reading of the statute—and the one that accords with Sixth Circuit dicta—is that the prerequisite is satisfied upon the earlier of either full exhaustion of administrative rights *or* 30 days from the warden's receipt of a compassionate release request. Here, because Defendant submitted a request to his warden more than thirty days before bringing the motion, he satisfied the threshold inquiry under § 3582(c)(1)(A).

II.     Extraordinary and Compelling Reasons

A defendant who requests compassionate release must demonstrate that extraordinary and compelling reasons warrant reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Guidelines Manual provides six categories of circumstances that may be considered "extraordinary and compelling," concerning (1) Defendant's medical condition; (2) Defendant's age; (3) family circumstances; (4) whether defendant was a victim of abuse; (5) other reasons; and (6) unusually long sentences. U.S.S.G. § 1B1.13(b).[1] Extraordinary and compelling family circumstances include the

---

[1] Unusually long sentences are not currently a viable basis for granting a motion for compassionate release in the Sixth Circuit. *See United States v. Bricker*, 135 F.4th

"incapacitation of the defendant's parent when the defendant would be the only available caregiver." *Id.* at § 1B1.13(b)(3)(C).

According to Defendant, he is the sole caregiver of his mother, and she has been experiencing life-threatening health conditions. ECF No. 42, PageID.279. Defendant explained that his mother, a 50-year-old, had emergency surgery to receive a pacemaker. Defendant's mother has custody of three young children: two of her own children and the child of her late daughter. *Id.* Defendant said his wife can "submit all documents if necessary." *Id.*

Although Defendant claimed he is his mother's sole caregiver, the motion itself suggests that other family members, including Defendant's wife, are available to take care of her. And he did not allege that she would, for example, be unable to receive her heart surgery if he were not there to care for her. The Government pointed out that Long has other family members, including adult siblings, who reside in the Saginaw area. ECF No. 48, PageID.306; *see also* ECF No. 27, PageID.166 (discussing family).

Furthermore, the need to care for a parent is only extraordinary and compelling if the parent is "incapacitated." U.S.S.G. § 1B1.13(b)(3). Incapacitation is a debilitating injury or illness that renders an individual "completely disabled, meaning that the individual cannot carry on any self-care and is totally confined to a bed or chair." *United States v. Kalasho*, No. 18-20063, 2025 WL 1404951, at *3 (E.D.

---

427, 430 (6th Cir. 2025) (holding that U.S.S.G. § 1B1.13(b)(6) is invalid), *petition for cert. filed*, 25-81 (July 18, 2025).

Mich. May 15, 2025) (referencing BOP Program Statement § 5050.502 defining incapacitation) (citation modified). Here, Defendant did not allege that his mother is unable to care for herself or that she is confined to a bed or chair. Rather, he explained that she takes care of minor children. *See* ECF No. 42, PageID.279–280.

Accordingly, Defendant did not demonstrate that extraordinary and compelling reasons warrant a sentence reduction. The Court must therefore deny the motion.

**WHEREFORE**, it is hereby **ORDERED** that the motion for compassionate release [42] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 5, 2026